<u>**IN THE UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEBRASKA**</u>

| | |
|---|---|
| LMMC, LLC and LMMC HOLDINGS, LLC<br><br>      Plaintiffs,<br><br>   v.<br><br>GABRIEL M. SULLIVAN, MONI SULLIVAN, DR. DARIN JACKSON, LIMITLESS OPTIONS, LLC, and INFINITE OPTIONS, LLC,<br><br>      Defendants. | Case No. 8:19-cv-560<br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

     Plaintiffs LMMC, LLC ("LMMC") and its related company LMMC Holdings, LLC ("LMMC Holdings") for their Complaint against Defendants Gabriel M. Sullivan ("Sullivan"), Moni Sullivan ("Ms. Sullivan"), Dr. Darin Jackson ("Dr. Jackson"), Limitless Options, LLC ("Limitless Options"), and Infinite Options, LLC ("Infinite") (collectively referred to herein as "Defendants"), state and allege as follows:

<u>**NATURE OF THE ACTION**</u>

     1.    This is an action for, among other things, Lanham, Act violations and breach of contract, resulting from Defendant Sullivan's breaches of his fiduciary and other duties to LMMC, Sullivan's violation of a Repurchase Agreement and Consulting Agreement, between LMMC and Sullivan, and several other tortious and improper acts committed by Defendants.

     2.    LMMC, LLC is an innovative health clinic specializing in male health. LMMC helps men of address medical conditions such as low testosterone, hormone deficiencies decreased libido, sleep issues, weight gain, lack of energy and focus, loss of muscle mass, joint

pain, erectile dysfunction, and more.  LMMC Holdings, LLC is an affiliated company of LMMC, LLC.

3.     LMMC's expertise in men's health is unparalleled.  As part of its superior patient treatment and service, LMMC employs only medical providers who are dedicated to treating its patients' symptoms and hormone deficiencies with proven therapies.

4.     LMMC prides itself of the quality of the medical care provided to its patients, and stands above its competitors as a result of its ethical and honorable standards of business practice.

5.     In late 2015 and early 2016, Sullivan and Daniel P. Molloy ("Molloy") entered into discussions regarding owning and operating a men's health clinic.  Sullivan had prior experience in men's health care and held himself out as an expert in the operations of a men's health clinic.  Molloy was an entrepreneur and investor and had expertise in advertising and marketing.

6.     In May 2016, Sullivan and Molloy formed LMMC, LLC, with Molloy owning 75% of the membership interests of the organization and Sullivan owning 25% of the membership interests.

7.     Sullivan was also employed by LMMC from May 2016 until May 2018 as the its Director of Operations and was paid an annual salary and received benefits.  As Director of Operations of LMMC, Sullivan managed the day to day operations of the medical clinic and directed and implemented the policies and procedures of LMMC.

8.     From late 2017 and through 2018, LMMC discovered that Sullivan implemented policies and procedures that were harmful to LMMC and not in the best interests of the organization and, as a result, exposed LMMC to potential liability.

9.      In May 2018, based on this misconduct, and dissatisfaction with Sullivan's performance, LMMC terminated Sullivan's employment.  In addition, the parties entered into a Repurchase Agreement and Consulting Services Agreement ("Consulting Agreement") pursuant to which LMMC re-purchased Sullivan's interest in LMMC and Sullivan agreed, among other things, not to solicit LMMC's patients or employees as more specifically set forth in the Consulting Agreement, not to compete with LMMC, and not to disparage LMMC.

10.      In August 2018, it became apparent to LMMC that among other things, Sullivan was not able to fulfill his role as consultant to LMMC in a "professional and competent manner" and LMMC terminated Sullivan's consulting relationship in accordance with the terms of the Consulting Agreement.

11.      Rather than fulfill his obligations to LMMC, Defendant has now violated his Repurchase Agreement and Consulting Agreement by forming and working with Defendant Infinite Options Men's Clinic, soliciting LMMC's patients, and by disparaging LMMC in the marketplace.

12.      Infinite, Limitless Options, Dr. Jackson, and Ms. Sullivan have further tortiously interfered with LMMC's contractual relationship with Sullivan by, among other things, working with Sullivan to set up a competing business with LMMC and soliciting LMMC's patients, contrary to the terms and obligations of the Repurchase Agreement and Consulting Agreement.

## PARTIES

13.      LMMC owns and operates a medical clinic specializing in men's health located in the Omaha, Nebraska metro area.   LMMC Holdings is an affiliated company of LMMC.

14.      Mr. Sullivan is an individual citizen currently working in Douglas County at 17650 Wright Street, Omaha, Nebraska 68130.  He is an owner of Infinite, a company that competes with LMMC.

4845-5258-7950.3

15.   Ms. Sullivan is Mr. Sullivan's wife, an individual citizen who, upon information and belief, resides in Douglas County, Nebraska.

16.   Dr. Darin Jackson, an individual, is an owner of Infinite, a company that competes with LMMC, and currently works at 17650 Wright Street, Omaha, Nebraska 68130.

17.   Infinite is a men's health clinic currently operating at 17650 Wright Street, Omaha, Nebraska 68130.

18.   Limitless Options, LLC is a Nebraska entity that competes with LMMC.

**JURISDICTION AND VENUE**

19.   This Court has jurisdiction over Defendants in that this is a civil action arising under the Lanham Act, 15 U.S.C. § 1125.  This Court has supplemental jurisdiction over the other claims in this complaint under 28 U.S.C. § 1367 because the claims form part of the same case or controversy.

20.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district and under 28 U.S.C. § 2201 and 28 U.S.C. §1400(a) because Defendants can be found in this judicial district.

**STATEMENT OF FACTS**

***Business of LMMC and Sullivan's role at LMMC Prior to May 2018***

21.   As set forth above, LMMC provides specialized health care services focusing on men's health.

22.   Through its physicians and other team members, LMMC offers unparalleled expertise in treating unique men's health issues.

23.   From LMMC's inception until the end of 2017, Sullivan was responsible for the day to day operations of the clinic and directing and implementing the policies and procedures of

4

LMMC. This included responsibility for all aspects of the clinic, from human resources and hiring, through patient relations, fiscal management and billing practices.

24.     As part of this leadership role, Sullivan developed and coordinated the guidelines and procedures that governed the medical billing and coding practices for LMMC. Specifically, and among other things, Sullivan was responsible for (i) setting rates and charges for services provided at the clinic; (ii) contracting LMMC as a participating provider with insurance companies; (iii) directing what claims for clinical services were submitted for payment to insurance companies and/or patients; (iv) ensuring that appropriate documentation was maintained in the patient's medical records for all billed services in accordance with insurance company contractual requirements; (v) hiring and managing the relationship with the outsourced medical billing company; and (iv) ensuring compliance with laws and regulations and insurance company requires regarding coding of services and submission of claims.

25.     Sullivan further had substantial contact with LMMC's patients on a regular basis. He had access to their entire files, including their contact information and specific healthcare needs, as well as LMMC's proprietary and confidential policies and procedures.

26.     Sullivan ceased to be an employee of LMMC as of May 2018, and his ownership interest in LMMC was repurchased by LMMC in May 2018 pursuant to the Repurchase Agreement.

***Terms of the Repurchase Agreement and Consulting Services Agreement***

27.     Pursuant to the Repurchase Agreement, LMMC purchased Sullivan's interest in LMMC for $750,000 in or around May 2018.

28.     As part of the repurchase of Sullivan's interest in LMMC, Sullivan and LMMC entered into a Consulting Agreement to effectuate the orderly transition of the operations of the clinic. Pursuant to the Consulting Agreement, Sullivan agreed to provide certain consulting

5

services to LMMC for a two year period of time.  The Consulting Agreement was terminated by LMMC due to Sullivan's breaches in August 2018.

29.     By signing the Consulting Agreement, Sullivan agreed that the "methodologies, processes, strategies, reports and documents of LMMC" were confidential and constitute valid trade secrets of LMMC.  [Consulting Agreement at ¶ 6.1].  Sullivan agreed not to "disclose or divulge any of such Confidential Information he has acquired or may in the future acquire as a result of his prior affiliation, employment, and/or ownership interests in LMMC . . . ."  [*Id*.].  Sullivan further agreed that he would not "utilize said Confidential Information in any respect, except as set forth in this Agreement or as required by applicable law, without the express written consent of LMMC."  [*Id*].

30.     Sullivan further agreed that he would not solicit any employees or LMMC or any client of LMMC during his engagement with LMMC and for a two-year period following the termination of the Consulting Agreement.  [Consulting Agreement at ¶ 6.2].  The Consulting Agreement defines "Client of LMMC" to include clients or customers (i) for whom Sullivan may have been responsible for the relationship at the termination of Sullivan's Consulting Agreement with LMMC; (ii) with whom Sullivan had direct contact in the performance of his duties for LMMC within the twelve month period preceding the termination of the Agreement; and (iii) for whom Sullivan, directly or indirectly, performed  services on behalf of LMMC within the twelve month period preceding termination of the Agreement.  [*Id*.].

31.     By signing the Consulting Agreement and selling his interest in LMMC, Sullivan also agreed to a Non-Competition clause in which he agreed as follows: "[d]uring Mr. Sullivan's engagement with LMMC and during the Restriction Period, Mr. Sullivan shall not, without the express written approval of LMMC, directly or indirectly, either for or on behalf of himself or

any third party, within the Omaha, Nebraska Metro area, the state of Nebraska, Iowa, Missouri, Kansas, Illinois and Minnesota either (i) compete with the business of LMMC, whether as an employee, employer, consultant, agent, principal, partner, shareholder, corporate officer, director, or through any other kind of ownership; or (ii) engage in or render any services to any business engaged in the business in which LMMC is involved, becomes involved or is reasonably considering becoming involved from the date of this [Consulting] Agreement until its termination.  The Parties agree that Mr. Sullivan is under no such restrictions in Florida." [Consulting Agreement at ¶ 6.3].

32.    Sullivan further agreed not to make any "disparaging, malicious, critical, false or otherwise detrimental comments to any person or entity concerning LMMC or any of its employees, contractors, members, managers, officers, shareholders, or affiliates; the products, services or programs provided or to be provided by LMMC; or the business affairs or the financial condition of LMMC."  [Consulting Agreement at ¶ 6.4].

33.    Moreover, in the Consulting Agreement, Sullivan agreed and represented that he would "have no right to sublicense, reproduce, grant access to, sell or otherwise use any LMMC Intellectual Property other than in connection with the operation of LMMC and the Clinic within the scope of this Agreement without the prior consent of LMMC.  Mr. Sullivan shall have no ownership interest and no rights or interest in (other than a license to use the Intellectual Property in connection with this Agreement) the Intellectual Property."  [Consulting Agreement at ¶ 3.2]

34.    "Intellectual Property" is defined to include "procedures, manuals, methodologies, pricing formulae, negotiating strategies, and other similar items conceived, designed, developed, perfected, made, implemented, or used by LMMC in connection with Products and Services provided hereunder or in connection with pricing of Products and

7

Services, whether acquired prior to, on, or after the Commencement Date" [Consulting Agreement at ¶ 3.2].

***Sullivan's Breaches of his Duties of LMMC***

35.     As an employee of LMMC, Sullivan owed a duty of loyalty to LMMC under Nebraska law.

36.     As a member of LMMC, Sullivan owed fiduciary duties to LMMC to act at all times in the best interests of LMMC.

37.     Following Sullivan's departure from LMMC, LMMC discovered that Sullivan breached his duties to LMMC as both an employee and a member of the company.

38.     For example, Sullivan, who was responsible for patient services and billing as described more particularly above, failed to implement policies and procedures that ensured that LMMC was in compliance with the contractual requirements and billing policies of insurance companies.  In fact, Sullivan intentionally implemented procedures that he knew were not compliant with insurance company requirements.  In an email shortly before his termination from LMMC, and as a contributing factor to his termination from LMMC, Sullivan wrote: "What we were doing wasn't wrong it just doesn't follow their personal guidelines. . . . We need to beat them at their own game and out smart them until they change the rules again."

39.     Sullivan further created hostile relationships with pharmaceutical drug representatives and other third party professionals on whom LMMC relies, resulting in certain vendors and companies refusing to do business with LMMC, causing harm to LMMC.

40.     As a result of Sullivan's actions at LMMC relating to billing and other matters, for which Sullivan was solely responsible, in August 2018 an insurance company alleged that from January 1, 2016 to January 1, 2018, LMMC was in direct violation of its provider

participation agreement and its billing policies and procedures and, at as a result, LMMC was assessed a significant overpayment in excess of $1.9 million.

***Sullivan's Breaches of the Repurchase Agreement and Consulting Agreement***

41.     In violation of the Repurchase Agreement and Consulting Agreement, Sullivan is now an owner of and working with Infinite, a direct competitor of LMMC's, performing similar services as he did for LMMC in direct competition with the business of LMMC and/or engaging in or rendering series to a business engaged in the business in which LMMC is involved. Dr. Jackson is a co-owner of Infinite.

42.     Upon information and belief, Infinite opened in August 2018 to compete directly with LMMC.

43.     Infinite defines its mission as virtually identical to LMMC's business:  "Whether it's high blood pressure, low energy, erectile dysfunction, lack of focus, depression, weight gain, low libido or you are just looking for an annual check-up, Infinite Options Men's Clinic's board-certified physicians who are dedicated to treating your symptoms using proven methods that achieve unmistakable results! From Primary Care to Erectile Dysfunction and Testosterone replacement Therapy, Infinite Options Men's Clinic provides ALL of the health and wellness options you will ever need."  https://lowtomaha.com/

44.     As such, Infinite is engaged in business and renders services in the business in which LMMC is involved and competes with the business of LMMC.

45.     Plaintiffs are now aware that Sullivan has been working, directly or indirectly, with Infinite since at least August 2018 and continues to work with Infinite in direct competition with the business or LMMC or otherwise engage in or render services to Infinite, in violation of the Consulting Agreement.  Specifically, Sullivan sees patients at Infinite and provides assistance

4845-5258-7950.3

to Infinite in connection with Infinite's business of providing specialized men's health services, explicitly relating to low testosterone.

46.     Moreover, Sullivan, directly and indirectly, has been soliciting patients of LMMC with whom he had contact or was responsible while at LMMC to move their treatment away from LMMC and to Infinite.  Upon information and belief, patients of LMMC have, in fact, sought treatment at Infinite as a result of Sullivan's efforts.

47.     When talking with LMMC patients, Sullivan lures patients to Infinite by wrongfully using LMMC Confidential Information in violation of the terms of the Consulting Agreement.  For example, Sullivan has utilized his knowledge of LMMC's pricing to solicit patients by telling them they will pay less for services at Infinite.

48.     Sullivan, while the owner of and working for Infinite, has further been offering to fabricate medical records to ensure that the treatment qualifies for the medical policies of a certain insurance company in an attempt to attract clients of LMMC to transfer their business to Infinite.

49.     Infinite, by accepting the services of Sullivan and by otherwise participating in Sullivan's breaches of the Consulting Agreement, has interfered with LMMC's contractual rights with Sullivan, as well as with LMMC's business relationships with its patients.

50.     Ms. Sullivan has interfered with LMMC's rights and obligations under the Repurchase and Consulting Agreement by actively competing with LMMC and soliciting clients for the benefit of Infinite and Sullivan.  For example, on September 19, 2019, Ms. Sullivan added a public Facebook post in which she advertised Infinite's services which directly compete with LMMC's services.

4845-5258-7950.3

51.     As a result of Defendants' actions, LMMC has lost clients and business, as well as new business prospects, in Nebraska and elsewhere to Defendants.

52.     Defendants' competition with LMMC and siphoning of LMMC's clients in breach of the Consulting Agreement has continued up to the filing of this Complaint and shows no signs of abating.

***Infinite's Improper Appropriation and Use of Trademarks, Service Marks and Trade Names***

53.     LMMC Holdings, LLC has used several trademarks comprising LIMITLESS in interstate commerce, including in connection with medical services, since at least as early as July 19, 2018.

54.     In particular, LMMC Holdings, LLC has used the trademarks LIMITLESS, LIMITLESS MALE, LIMITLESS MALE MEDICAL, LIMITLESS MALE MEDICAL CLINIC, and corresponding logo design marks including the design marks pictured below (the "Limitless Marks"), and has garnered significant brand recognition and goodwill in the Limitless Marks in connection with various medical services and products.

 

55.     LMMC Holdings, LLC owns Nebraska registered Trade Names "Limitless Male" and "Limitless Male Medical Clinic."  The Trade Name Applications were filed August 22, 2018 and August 23, 2018, respectively.   LMMC Holdings, LLC authorizes LMMC to use its Trademarks, Service Marks, and Trade Names in connection with its business.

4845-5258-7950.3

56.     On September 4, 2018, Sullivan filed a trademark application (U.S. Application Serial No. 88103872) with the United States Patent and Trademark Office ("USPTO") for the mark LIMITLESS OPTIONS MEN'S CLINIC on behalf of "Limitless options", the purported owner of the mark, in connection with "Medical treatment and supplies and drugs as well as some supplemental goods."

57.     In the federal trademark application, Sullivan declared that no others have the right to use a mark resembling LIMITLESS OPTIONS MEN'S CLINIC so as to be likely to cause confusion or mistake, or to deceive.  Sullivan also asserted use of LIMITLESS OPTIONS MEN'S CLINIC in U.S. commerce by Limitless options since at least as early as August 15, 2017 in connection with "Medical treatment and supplies and drugs as well as some supplemental goods."

58.     An official USPTO Notice of Abandonment issued on July 23, 2019 with respect to the LIMITLESS OPTIONS MEN'S CLINIC application. The application was refused, dismissed, or invalidated by the USPTO and the application is no longer active.

59.     On February 19, 2019, LMMC Holdings, LLC filed federal trademark applications to register LIMITLESS MALE, LIMITLESS MALE MEDICAL and LIMITLESS MALE MEDICAL CLINIC, each in connection with "Health assessment services; Health care services for treating common symptoms of low testosterone, including low libido, weight gain, lack of concentration, decreased muscle and strength, low energy and diminished sexual performance; Health care services, namely, diagnosis and treatment of symptoms of low testosterone; Health care services, namely, testosterone testing, testosterone replacement therapy, platelet-rich plasma therapy, erectile dysfunction treatments, and human growth hormone

12

replacement therapy; Medical services."   Such trademark applications are pending at the USPTO.

60.     The USPTO issued Office actions on May 1, 2019 indicating the applied-for LIMITLESS OPTIONS MEN'S CLINIC mark may create a likelihood of confusion with the LIMITLESS MALE MEDICAL CLINIC mark, the LIMITLESS MALE MEDICAL mark, and the LIMITLESS MALE mark.

61.     LMMC has used, prominently displayed and significantly invested in advertising the Limitless Marks in connection with LMMC's medical services and products such that customers strongly associate LMMC products and services with the Limitless Marks.   The Limitless Marks are distinctive in connection with LMMC's medical services and products and symbolize and represent considerable goodwill in the marketplace.

62.     After LMMC's adoption and use of the Limitless Marks, and after the Limitless Marks had garnered considerable strength in the marketplace and had come to symbolize considerable goodwill, Sullivan, Infinite and Limitless Options appropriated some of the most significant and recognizable aspects of the Limitless Marks and adopted and attempted to register LIMITLESS OPTIONS MEN'S CLINIC and adopted and used LIMITLESS OPTIONS and derivatives of that mark including the logo design mark pictured below (the "Limitless Options Marks"), in bad faith, in connection with a variety of medical services and products including those that are identical to and directly overlap with the products and services provided by LMMC in connection with the Limitless Marks, to an identical demographic of customers.



63.     Infinite and Limitless Options continue to advertise and offer services that compete with those of LMMC under the Limitless Options Marks, including on social media and elsewhere including https://menslimitlessoptions.com/.

64.     Infinite and Limitless Options have infringed the Limitless Marks in interstate commerce by operating a men's health clinic in connection with the Limitless Options Marks and selling, advertising and rendering competitive medical services and products to an identical demographic of customers.

65.     Infinite and Limitless Options adopted and have used the Limitless Options Marks in bad faith and with an intent to cause confusion, mistake and to deceive.

## COUNT I
## VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A)
### (Infinite and Limitless Options)

66.     LMMC hereby restates and realleges paragraphs 1-65 above as if set forth fully herein.

67.     LMMC Holdings, LLC is the owner of the Limitless Marks, which have been prominently used and advertised in U.S. commerce in connection with LMMC's medical services, and is also the owner of trade name registrations for Limitless Male and Limitless Male Medical Center.

68.     LMMC owns considerable common law rights in the Limitless Marks in connection with medical services by virtue of extensive use and advertising of the Limitless Marks to identify LMMC's medical services in interstate commerce and distinguish them from goods and services of others.

69.     One of Infinite's owners is a former owner and employee of LMMC.

70.     Infinite and Limitless Options are attempting to operate in the same industry as LMMC and LMMC Holdings, LLC and provide substantially similar services in the same

customer/patient market as LMMC, using similar manners of marketing as LMMC (e.g., website, social media).

71.     Infinite and Limitless Options derived the Limitless Options Marks from the Limitless Marks and adopted and have used the Limitless Options Marks in bad faith in connection with services that are identical to those of LMMC, with an intent to deceive and cause customer mistake or confusion as to source, affiliation, origin, sponsorship or approval of the products and services of Infinite and Limitless Options, and those of Plaintiffs.

72.     Infinite and Limitless Options prominently use the word "Limitless" in connection with marketing and promoting their businesses, including within the Limitless Options Marks, in a manner that is likely to cause confusion, mistake and deception as to affiliation, connection or association of Infinite or Limitless Options with LMMC and as to the origin, sponsorship or approval of Infinite's or Limitless Options' goods and services by LMMC.

73.     Infinite's or Limitless Options' prominent use of "Limitless" and other elements in the Limitless Marks, including use of those elements in the Limitless Options Marks, in connection with Infinite's or Limitless Options' business is intended to, and likely to, cause consumer confusion as to LMMC's affiliation with Infinite or Limitless Options and sponsorship, endorsement or approval of Infinite-related or Limitless-Options-related services. Infinite's and Limitless Options' attempts to imply an affiliation between LMMC and Infinite and Limitless Options (which does not exist) for the purpose of marketing the services of Infinite and Limitless Options deceives customers by trading on LMMC's established name, trademarks, and goodwill in the men's health industry.

74.     Such ongoing use of the Limitless Options Marks has been without permission of LMMC. Such ongoing use is not a descriptive use and is not necessary to describe the services of

15

Infinite or Limitless Options. The use of the Limitless Options Marks by Infinite or Limitless Options does not reflect a true and accurate relationship between Infinite or Limitless Options and LMMC (and its products and/or services).

75.     Upon information and belief, such ongoing use of "Limitless" and other elements that overlap with those comprising the Limitless Marks by Infinite or Limitless Options, including in the Limitless Options Marks, has been with intention to deceive and confuse the relevant public, and has resulted in actual confusion, evidencing a likelihood of confusion.

76.     As a result of the prominent use of "Limitless", and other elements of the Limitless Marks, in the Limitless Options Marks in connection with the services offered by Infinite and Limitless Options, Infinite and Limitless Options are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

77.     The actions of Infinite and Limitless Options are likely to damage LMMC.

78.     The actions of Infinite and Limitless Options have caused and will continue to cause LMMC commercial and competitive injury and damage (including monetary damages) if they are not enjoined.

## COUNT II
## BREACH OF CONTRACT
### (Against Sullivan)

79.     LMMC realleges and incorporates herein by this reference Paragraphs 1 through 78 of this Complaint.

80.     Sullivan signed a valid and binding Repurchase Agreement and Consulting Agreement that contained reasonable restrictions necessary to protect LMMC's legitimate interests of client relationships, goodwill, and loyalty.

81.     These restrictions were not unduly harsh or oppressive Sullivan, and Sullivan acknowledged and agreed as such.

16

82.     Sullivan has breached the Repurchase Agreement and Consulting Agreement by, among other things, directly and/or indirectly, for himself or a third party, competing with business of LMMC and engaging in and rendering services to a business engaged in the business in which LMMC is involved.   Sullivan has also directly and/or indirectly solicited LMMC clients, diverted clients away from LMMC, and induced LMMC clients to cease doing business with LMMC and to engaged Sullivan and/or a third party for products and services offered by LMMC.

83.     Sullivan has further improperly maintained and used LMMC's Confidential Information and Intellectual Property as described herein.

84.     As a result of the foregoing, LMMC has suffered harm, and continues to suffer harm, in an amount to be determined at trial, through Sullivan's efforts to harm LMMC by working for and/or rendering services to a competing business through use of LMMC Confidential Information, Intellectual Property, and otherwise, and Sullivan's efforts to steal LMMC's clients and destroy its client goodwill, in violation of the agreements signed by Sullivan.

## COUNT III
## UNFAIR COMPETITION
### (Against All Defendants)

85.     LMMC realleges and incorporates herein by this reference Paragraphs 1 through 84 of this Complaint.

86.     Sullivan provided services for LMMC for approximately 2.5 years, including most recently pursuant to the Consulting Agreement.

87.     Sullivan worked directly with LMMC's clients including patient relations and accounts receivable to facilitate the health-related services to those clients.

4845-5258-7950.3

88.     Sullivan worked for several years as the "face" of LMMC promoting LMMC's business and developing its client goodwill.

89.     Upon information and belief, Defendants are now unfairly competing with LMMC and exploiting LMMC's goodwill by contacting, soliciting, and accepting LMMC's clients in an effort to obtain business for themselves.

90.     As a result of the foregoing, LMMC has suffered harm, and continues to suffer harm, in an amount to be determined at trial, through Defendants' efforts to steal LMMC's clients and to destroy its client loyalty and goodwill.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH LMMC'S RELATIONSHIPS OR**
**EXPECTATIONS**
**(Against All Defendants)**

91.     LMMC realleges and incorporates herein by this reference Paragraphs 1 through 90 of this Complaint.

92.     LMMC has valuable business relationships and expectancies with its clients in Nebraska, Iowa and throughout the United States, and it has a valid expectation that the client relationships will continue.

93.     The Defendants had knowledge of the valid client relationships and expectancies among LMMC and its clients.

94.     Defendants have made multiple direct and/or indirect contacts with LMMC's clients, and have accepted business from LMMC's clients, in an effort to interfere with LMMC's business relationships and/or expectancies with its customers in Nebraska and throughout the Midwest.

95.     Defendants unjustifiably and intentionally interfered with LMMC's valuable business and client relationships and expectancies when they induced LMMC's clients to

18

terminate their client relationship with LMMC and accepted LMMC clients in breach of the Repurchase Agreement and Consulting Agreement, and otherwise engaged in the improper activities described above.

96.     Defendants also unjustifiably and intentionally interfered with LMMC's business relationships and expectancies when Defendants induced LMMC clients, to leave their physician relationship with LMMC in order to improperly exploit LMMC's client goodwill.

97.     As a result of the foregoing, LMMC has suffered harm, and continues to suffer harm, in an amount to be determined at trial, through Defendants' efforts to steal LMMC's valuable business and client relationships and expectancies.

**COUNT V**
**TORTIOUS INTERFERENCE WITH LMMC'S CONTRACTUAL RELATIONSHIP**
**(Against All Defendants)**

98.     LMMC realleges and incorporates herein by this reference Paragraphs 1 through 97 of this Complaint.

99.     LMMC has a valuable contractual relationship with Sullivan and it has a valid expectation that the contractual relationship will continue and that Sullivan would abide by his agreement to protect the Confidential Information of LMMC, as well as his non-competition and non-solicitation obligations.

100.    Defendants had knowledge of the valid contractual relationship between LMMC and Sullivan.

101.    Defendants induced or otherwise caused Sullivan not to perform his obligations under the Repurchase Agreement and Consulting Agreement by, among other things, encouraging Sullivan to compete with the business of LMMC and provide services to Infinite that are within the business of LMMC, as well as accepting LMMC clients solicited, directly and/or indirectly, by Sullivan.  Infinite further has accepted confidential and proprietary

19

information of LMMC's provided by Sullivan, in violation of Sullivan's contractual obligations to LMMC.

102.    As a result of the foregoing, LMMC has suffered harm, and continues to suffer harm, in an amount to be determined at trial, through Defendants' efforts to steal LMMC's valuable business and client relationships and expectancies.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Against All Defendants)**
**(In the Alternative)**

103.    LMMC realleges and incorporates herein by this reference Paragraphs 1 through 102 of this Complaint.

104.    As an owner, employee, and consultant for LMMC, Sullivan was provided access to, among other things, LMMC's proprietary policies and procedures and LMMC's client and patient lists and information.

105.    Defendants have solicited and accepted LMMC clients for the purpose of providing these clients with products and/or services of the type or character previously provided by LMMC, and have improperly used LMMC Confidential Information in Infinite competing business.

106.    Defendants are receiving the benefits of the clients which transferred Infinite without paying compensation to LMMC and, as such, Defendants are being unjustly enriched.

107.    Sullivan has further been unjustly enriched by his receipt of $750,000 for his interest in LMMC pursuant to the Repurchase Agreement.  Sullivan has received the benefit of the $750,000 despite that fact that, subsequent to the repurchase, LMMC discovered that Sullivan had engaged in policies that caused harm to LMMC.

4845-5258-7950.3

108.    Justice and fairness dictate that Defendants should compensate LMMC for the clients that transferred and for clients that have been obtained by the improper use of LMMC's Confidential Information and should be required to reimburse LMMC for the portion of the $750,000 that was paid to him pursuant to the Repurchase Agreement that represents the inflated value of LMMC prior to LMMC discovered the improper actions of Sullivan.

109.    As a result of Defendants' actions, LMMC has suffered and continues to suffer damages and harm in an amount to be determined at trial.

## COUNT VII
## BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTY
### (Against Sullivan)

110.    LMMC realleges and incorporates herein by this reference Paragraphs 1 through 109 of this Complaint.

111.    Sullivan was an owner of LMMC, an employee of LMMC and a consultant to LMMC.

112.    As a member of a closely-held LLC, Sullivan owed fiduciary duties to LMMC and its other members.

113.    As an employee and consultant to LMMC, Sullivan owed a duty of loyalty to LMMC

114.    Sullivan has breached his fiduciary duties and duty of loyalty by, among other things,

      a.    Failing to implement appropriate billing and other policies and procedures, resulting in a substantial pecuniary loss to LMMC and damaging its reputation and relations with insurance companies;

      b.    Competing with and providing services to Infinite who competes with the business of LMMC;

21

c.      Soliciting LMMC clients with whom Sullivan had direct contact during the twelve (12) months prior to his departure and/or for whom Sullivan was responsible for the purpose of providing these clients with products and/or services of the type or character previously provided by LMMC;

d.      Accepting LMMC clients with whom Defendants had personal contact during the twelve (12) months prior to his departure and/or for whom Sullivan was responsible for the purpose of providing these clients with products and/or services of the type or character previously provided by LMMC; and

e.      Improperly maintaining and using LMMC's Confidential Information and Intellectual Property.

115.    As a direct and proximate result of LMMC's breach of his duty of loyalty to LMMC, LMMC has suffered, and continues to suffer, damages in an amount to be determined at trial and Sullivan has to forfeit and repay all compensation he received while breaching his fiduciary duties.

**COUNT VIII**
**VIOLATION OF THE NEBRASKA DECEPTIVE TRADE PRACTICES ACT,**
**NEB. REV. STAT §§ 87-301 ET SEQ.**

116.    LMMC hereby restates and realleges paragraphs 1-115 above as if set forth fully herein.

117.    LMMC Holdings, LLC is the owner of the Limitless Marks and trade name registrations Limitless Male and Limitless Male Medical, and has considerable valuable trademark rights in common law in the Limitless Marks.

22

4845-5258-7950.3

118.    Use of the Limitless Options Marks by Infinite or Limitless Options in connection with their services rendered is likely to cause, and has caused, confusion or misunderstanding of an affiliation with, and sponsorship by, LMMC.

119.    The conduct of Infinite and Limitless Options is a deceptive trade practice as defined by, and in violation of, the Nebraska Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302.

120.    Upon information and belief, there have been actual incidents of confusion as to the affiliation between Infinite or Limitless Options and LMMC.

121.    The actions of Infinite and Limitless Options have caused and will continue to cause LMMC commercial and competitive injury and monetary damages if they are not enjoined.

**COUNT IX**
**MISUSE OF TRAD NAME UNDER NEB. REV. STAT §§ 87-208 ET SEQ.**
**(Against Infinite and Limitless Options)**

122.    LMMC hereby restates and realleges paragraphs 1-121 above as if set forth fully herein.

123.    Infinite and Limitless Options have, without LMMC's consent, used colorable imitations of LMMC's registered trade names in connection with the business of Infinite and Limitless Options in a manner likely to cause confusion, mistake or deception of purchasers.

124.    Infinite and Limitless Options have applied colorable imitations of LMMC's registered trade names to their business through advertisements, signage and other media in a manner intended to cause confusion, mistake or deception of purchasers.

125.    The conduct of Infinite and Limitless Options is misuse of a trade name as defined by, and in violation of, Neb. Rev. Stat. § 87-216.

23

126.    The wrongful use and display of, and promotion and sale of goods and services in connection with, colorable imitations of LMMC's registered trade names by Infinite and Limitless Options have caused and will continue to cause LMMC injury and damage.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment against Defendants, as well as for the following relief:

(i)     General damages in an amount to be proven at trial including, without limitation, the purchase price paid to Sullivan in connection with the purchase of his LMMC shares and the damages to LMMC arising from Sullivan's improper implementation of certain policies and procedures at LMMC;

(ii)    Lost profits in an amount to be proven at trial;

(iii)   Lost revenue and/or costs associated with the rebuilding of LMMC's client base;

(iv)    Injunctive relief enjoining the Defendants from certain improper activities, including, without limitation, competing with LMMC, solicitations and/or acceptance of LMMC's clients, use of LMMC's Confidential Information and Intellectual Property, and/or the solicitation of LMMC's employees;

(v)     Injunctive relief enjoining Defendants from improper use of Plaintiffs' trade names and other Intellectual Property;

(vi)    An accounting of Defendants' ill-gotten gains;

(vii)   Prejudgment and postjudgment interest;

(viii)  Costs and attorneys' fees as permitted by law; and

(ix)    Such other relief the Court deems just, equitable, or allowed by the pleadings.

4845-5258-7950.3

Dated this 23rd day of December, 2019

                                     LMMC, LLC and LMMC HOLDINGS, LLC,

                                     Plaintiffs

                                     By: */s/Victoria H. Buter*
                                         Victoria H. Buter #23841
                                         Daniel N. Bruce # 24387
                                         Kutak Rock LLP
                                         1650 Farnam Street
                                         Omaha, NE  68102-2186
                                         Phone Number: (402) 346-6000
                                         Facsimile: (402) 346-1148
                                         vicki.buter@kutakrock.com
                                         daniel.bruce@kutakrock.com