IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LMMC, LLC, and LMMC HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>GABRIEL M. SULLIVAN, MONI SULLIVAN, DR. DARIN JACKSON, LIMITLESS OPTIONS, LLC, and INFINITE OPTIONS, LLC,<br><br>Defendants. | 8:19CV560<br><br>**ORDER** |

This matter is before the Court on Plaintiffs LMMC, LLC ("LMMC") and LMMC Holdings, LLC's ("LMMC Holdings") (collectively, "Plaintiffs") Motion to Compel Discovery Responses (Filing No. 177). This matter is also before the Court on Defendants Gabriel Sullivan ("Mr. Sullivan"), Moni Sullivan ("Ms. Sullivan"), Limitless Options, LLC ("Limitless"), and Infinite Options, LLC's ("Infinite Options") (collectively, "Defendants") Motion to Compel (Filing No. 183).

For the reasons explained below, each motion will be granted, in part.

**BACKGROUND**

On December 23, 2019, Plaintiffs filed this suit asserting several claims, including violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); breach of contract; unfair competition; tortious interference with business relationships and contractual relationships; unjust enrichment; breach of the duty of loyalty and fiduciary duties; violation of the Nebraska Deceptive

Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq; and misuse of trade name in violation of Neb. Rev. Stat. § 87-208 et seq. The claims arise from a former business relationship between the parties.[1] (Filing No. 1.) Mr. Sullivan and Third-Party Defendant Daniel Molloy, Jr. ("Mr. Molloy") formed LMMC in May 2016, with Mr. Molloy owning seventy-five percent of membership interests and Mr. Sullivan owning the remaining twenty-five percent. (Filing No. 1.) Mr. Sullivan was employed as LMMC's Director of Operations. (Filing No. 1.)

Mr. Sullivan's employment was terminated in May 2018. LMMC and Mr. Sullivan entered a Repurchase Agreement and Consulting Services Agreement on May 9, 2018. (Filing No. 1; Filing No. 143; Filing No. 149-2.) Under the Agreement, LMMC purchased Mr. Sullivan's membership interest. (Filing No. 1; Filing No. 143.) Mr. Sullivan also agreed not to solicit LMMC's patients or employees, nor to compete with or disparage LMMC. (Filing No. 1; Filing No. 149-2.)

Plaintiffs allege Mr. Sullivan violated the Repurchase and Consulting Services Agreement in August 2018 by forming and working with Infinite Options, soliciting LMMC's patients, and disparaging LMMC. (Filing No. 1.) Plaintiffs allege Infinite Options and Mr. Sullivan's wife, Ms. Sullivan, tortiously interfered with the Repurchase and Consulting Services Agreement by working with Mr. Sullivan to compete with LMMC and solicit LMMC's patients. Plaintiffs further claim that Mr. Sullivan unlawfully used its confidential information to attract patients to use Infinite Options' services.[2] In particular, Plaintiffs claim Defendants used their trademarks and trade names in advertising in connection with Defendants' services.

Plaintiffs also allege Mr. Sullivan implemented policies and procedures during his employment that were harmful to LMMC. (Filing No. 1.) Plaintiffs maintain Mr. Sullivan's employment was terminated because his policies and procedures were not in the best interests of the organization and exposed LMMC to potential liability. (Filing No. 1.) The Complaint alleges that Mr. Sullivan "intentionally implemented procedures that he knew were not compliant with insurance company requirements." (Filing No. 1.) The Complaint states that due to Mr. Sullivan's

---

[1] Plaintiffs operate a health clinic that specializes in male health.

[2] Infinite Options ceased doing business after this suit was filed.

actions relating to billing and other matters "in August 2018 an insurance company alleged that from January 1, 2016, to January 1, 2018, LMMC was in direct violation of its provider participation agreement and its billing policies and procedures and, as a result, LMMC was assessed a significant overpayment in excess of $1.9 million." (Filing No. 1.)

Throughout the course of this litigation, Plaintiffs have served numerous sets of discovery requests. Many discovery disputes have arisen. On November 17, 2020, this Court held a telephone conference regarding one such discovery dispute, at which Mr. Sullivan appeared without Ms. Sullivan. Following the conference, the Court ordered the Sullivans to respond to Plaintiffs' First Second of Interrogatories and First Set of Requests for Production by December 17, 2020. (Filing No. 69.) On December 17, 2020, the Sullivans served their responses to Plaintiffs' First Set of Interrogatories to Mr. Sullivan; First Set of Requests for Production of Documents to Mr. Sullivan; First Set of Requests for Production of Documents to Ms. Sullivan; Second Set of Requests for Production of Documents to Mr. Sullivan; and Second Set of Requests for Production of Documents to Ms. Sullivan. (Filing No. 80-1.) The Sullivans did not produce documents along with their responses.

Plaintiffs' counsel subsequently reviewed the discovery responses and believed they were insufficient. Mr. Sullivan told Plaintiffs' counsel that he would produce documents by February 8, 2021. (Filing No. 80-1.) Because supplemental responses were not received, Plaintiffs filed a motion to compel on February 9, 2021. (Filing No. 78.) The motion to compel specifically pertained to Plaintiffs' First Set of Interrogatories Nos. 2, 5, and 6; Requests for Production of Documents to Mr. Sullivan Nos. 1, 3, 5-9, 11-17, 22, 23, and 26-28; and Requests for Production of Documents to Ms. Sullivan Nos. 7 and 8.

On April 6, 2021, the Court granted the motion to compel and ordered the Sullivans to supplement their responses to Plaintiffs' First Set of Interrogatories Nos. 2, 5, and 6; Requests for Production of Documents to Mr. Sullivan Nos. 1, 3, 5-9, 11-17, 22, 23, and 26-28; and Requests for Production of Documents to Ms. Sullivan Nos. 7 and 8. (Filing No. 103.) The Court instructed the Sullivans that if, when supplementing their responses, they contended they did not possess responsive documents, they had to explain and identify the efforts they undertook to locate the responsive documents and information. As to the discovery requests seeking patient information

from patient files at Infinite Options, Mr. and Ms. Sullivan were only required to provide a list of all individuals who are/were patients of Infinite Options. No other healthcare information regarding patients was ordered to be produced. The Court declined to award attorney's fees and costs to Plaintiffs based, in part, on the Sullivans' *pro se* status.

Mr. Sullivan and Ms. Sullivan appeared *pro se* in this suit and Limitless and Infinite Options were unrepresented until July 30, 2021. (Filing No. 128.) Prior to counsel entering an appearance on their behalf, a clerk's entry of default was entered against Limitless and Infinite Options. (Filing No. 125.) After counsel entered an appearance on Defendants' behalf, counsel promptly filed a motion to set aside the default, as well as a motion to file an amended answer. (Filing No. 130; Filing No. 132.) These motions, which Plaintiffs opposed, were later granted by the Court. (Filing No. 142.)

On November 18, 2021, Defendants filed an Amended Answer, Counterclaim, and Third-Party Complaint. (Filing No. 143.) The Amended Answer asserts three claims against LMMC and Mr. Molloy, on behalf of Mr. Sullivan. Mr. Sullivan's first cause of action alleges breach of the Consulting Services Agreement. Second, Mr. Sullivan alleges that LMMC and Molloy breached the covenant of good faith and fair dealing. Finally, in Mr. Sullivan's last cause of action, he alleged that Mr. Molloy, through LMMC, breached a fiduciary duty owed to Mr. Sullivan.[3]

On March 31, 2023, Defendants served (1) Infinite Options' and Limitless' Response to Plaintiff's Request for Production of Documents; (2) Mr. Sullivan's Response to Plaintiffs' Requests for Admission; (3) The Sullivans' First Supplemental Answers to Plaintiffs' Interrogatories; (4) The Sullivans' Supplemental Response to Plaintiffs' First and Second Sets of Request for Production of Documents; and (5) The Sullivans' Response to Plaintiffs' Third Set of Request for Production of Documents. (Filing No. 176.)

## DISCUSSION

The parties have each filed motions requesting that the Court compel the other to respond to discovery and produce certain information. The motions will be considered separately below.

---

[3] On August 10, 2022, the Court dismissed Mr. Sullivan's claim for breach of fiduciary duty. (Filing No. 152.) The Court also dismissed Mr. Sullivan's breach of contract claim, but only insofar as it was premised on fraud.

1. **<u>Plaintiffs' Motion to Compel</u>**

Plaintiffs seek an order (1) deeming Plaintiffs' Requests for Admissions admitted; (2) compelling a response to Plaintiffs' Interrogatory No. 5; (3) directing the Sullivans to fully comply with the Court's April 6, 2021 discovery order (or explain in detail why they are unable to do so); (4) requiring Defendants to respond to certain discovery requests without interposition of objections due to untimely responses to the discovery; (5) compelling Mr. Sullivan to respond to Plaintiffs' Second Set of Interrogatories Nos. 10-11; (6) compelling Infinite Options and Limitless to respond to Plaintiffs' First Request for Production of Documents Nos. 2, 11-14, 16-20, 22, 24, and 26; (7) compelling the Sullivans to respond to Third Request for Production of Documents Nos. 29-40; (8) compelling the Sullivans to respond to Fourth Set of Requests for Production Nos. 41-43 and 46-47; and (9) awarding Plaintiffs attorney's fees incurred in conjunction with the Motion to Compel.

The Court has reviewed each individual discovery request at issue and has considered the parties' arguments regarding each such request. Having done so, the Court concludes as set forth below.

A. **Requests for Admissions**

On October 9, 2020, Plaintiffs served Requests for Admissions on Mr. Sullivan. Mr. Sullivan did not answer the Requests for Admission within thirty days of service. Federal Rule of Civil Procedure 36, which deals with requests for admission, provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). However, "the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted." *Manatt v. Union Pac. R. Co., 122 F.3d 514, 517 (8th Cir. 1997)* (quotation omitted). "Because the district court has the power to allow a longer time, . . . the court, in its discretion, may permit the filing of an answer that would be otherwise untimely." *Id*.

"[T]he court may permit withdrawal or amendment [of admissions] if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). "The

two-prong test of Rule 36(b) directs the court to consider the effect upon the litigation and prejudice to the resisting party, rather than focusing on the moving party's excuses for an erroneous admission." *F.D.I.C. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) (internal quotation omitted). The prejudice contemplated by Rule 36(b) "relates to the difficulty a party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted." *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir. 1983).

The Court finds the Requests for Admissions should not be deemed admitted. If the Court were to find the matters admitted, Defendants would be greatly prejudiced in defending the action because the admissions are significant to the merits of this case. Further, Plaintiffs will not be prejudiced by allowing the untimely responses to stand. The answers to the Requests for Admissions were served before the close of discovery. Also, notably, Plaintiffs did not seek to have the Requests deemed admitted until years after they were served. During that time, the parties engaged in both discovery and discovery disputes over other matters. Therefore, the Requests for Admissions will not be deemed admitted by Defendants.

### B. Interrogatories to the Sullivans

The Sullivans were previously ordered by the Court to supplement their response to Interrogatory No. 5 of Plaintiffs' First Set of Interrogatories. The Sullivans were directed to provide a list of all individuals who are/were patients of Infinite Options. Rather than do so, however, the Sullivans pointed Plaintiffs to previously produced documents. This is insufficient. The Sullivans must supplement their response to Interrogatory No. 5 as previously ordered by the Court. In addition, for the reasons explained below, the Sullivans must also specifically identify those individuals on the list who were patients of Defendant Dr. Darin Jackson ("Dr. Jackson"), if possible.

As to Plaintiffs' and Mr. Molloy's Second Set of Interrogatories to Mr. Sullivan, Mr. Sullivan has agreed to supplement his responses. However, Plaintiffs argue Mr. Sullivan should be ordered to supplement his responses *without* imposition of objections. Plaintiffs maintain this is warranted because Mr. Sullivan's responses to these interrogatories were untimely.[4] The Court

---

[4]Plaintiffs argue that many of Defendants' responses to discovery requests should be answered without objection based on Defendants' failure to timely respond to discovery requests. This argument is rejected as to each discovery request addressed in this Order for the reason stated here. The Court will not address this issue again in this Order.

rejects Plaintiffs' argument based on timeliness. Defendants were proceeding *pro se* until July 2021. After that time, the parties engaged in lengthy motion practice unrelated to discovery. During that period, counsel apparently did not discuss any outstanding discovery responses. According to Defendants' counsel, Plaintiffs' counsel did not inquire as to the status of discovery or notify Defendants' counsel that there was outstanding discovery until shortly before the March 31, 2023 discovery deadline. Therefore, Mr. Sullivan (and the other Defendants) will not be required to supplement/respond without imposition of objections.

### C. Requests for Production to Infinite Options and Limitless

Plaintiffs maintain that Infinite Options' and Limitless' responses to Request for Production Nos. 2, 11, 12, 13, 14, 16-19, 20, 22, 24, and 26 are deficient and include boilerplate objections. Defendants disagree, arguing that the requests are overly broad, unduly burdensome, vague, and seek irrelevant information. Defendants further argue that some of the requests seek privileged and confidential information. As to these discovery requests, the Court finds as follows below.

Request Nos. 2, 11, 12, 13, 14, and 26 each seek relevant information. ([Filing No. 179-1](#).) However, Request Nos. 2, 11, and 14 are overly broad and must be revised to limit the requests to defined categories of information. The Court will not narrow the scope of these discovery requests for the parties. Plaintiffs may revise the requests and serve them upon Defendants. However, before doing so, the parties must confer regarding the scope of these requests. The scope of Request Nos. 12, 13, and 26 are appropriate and the information requested is clear and proportionate to the needs of the case. Therefore, responses to these requests must be provided.

Request No. 24 seeks patient lists and charts for patients treated by Dr. Jackson or whose treatment Dr. Jackson signed off on while associated with Infinite Options. ([Filing No. 179-1](#).) As written, this request is overly broad and covers protected health information. The Sullivans were previously directed to provide a list of all individuals who are/were patients of Infinite Options. This list should be sufficient to provide the relevant information sought through this Request. However, to the extent possible, this list to be provided by the Sullivans must identify the individuals specifically treated by Dr. Jackson.

7

Request Nos. 16, 17, 18, 19, 20, and 22 seek information related to a company known as 88 Med, including information regarding its formation and relationship with Infinite Options and Limitless. ([Filing No. 179-1](Filing No. 179-1).) 88 Med is not a party to this suit, but it appears both Dr. Jackson and Mr. Sullivan began working with 88 Med after this litigation was filed. Dr. Jackson's testimony indicates there is a possibility that patients from Infinite Options were able to transfer to 88 Med. ([Filing No. 179-1](Filing No. 179-1).) Plaintiffs argue they are entitled to documents regarding 88 Med to determine whether any non-compete or non-solicitation violations occurred. Plaintiffs also seek this information to determine whether confidential information was supplied and subsequently misused by 88 Med.

The Court finds that some discovery pertaining to 88 Med could be relevant to issues in this suit, given other discovery indicating that patients (who Plaintiffs claim were wrongfully taken from LMMC) may have transferred from Infinite Options to 88 Med. However, the scope of the requests is exceedingly broad. The scope of the requests is not proportionate to the type of information Plaintiffs want to acquire—which is information about the connection between Defendants and 88 Med, and the number (if any) of patients who transferred to 88 Med. It seems to the Court that these requests, as presently written, are an attempt to obtain all documents whatsoever regarding the operations of 88 Med, particularly Request No. 19. ([Filing No. 179-1](Filing No. 179-1).)

Defendants seem to assert they do not have any documents responsive to these requests. Still, if this is true, Defendants must explicitly say so in response to the discovery requests. The Court will allow Plaintiffs to revise these requests to obtain more targeted information. Again, the parties must confer regarding the scope of these requests before revised requests are served.

### D. Requests for Production to the Sullivans

Plaintiffs contend the Sullivans' responses to Plaintiffs' First and Second Set of Requests for Production of Documents remain deficient. On April 6, 2021, the Court ordered the Sullivans to supplement their responses to Requests for Production of Documents to Mr. Sullivan Nos. 1, 3, 5-9, 11-17, 22, 23, and 26-28; and Requests for Production of Documents to Ms. Sullivan Nos. 7 and 8. The Sullivans represent they do not have additional information responsive to these requests. The Court cannot compel the Sullivans to provide documents they do not have. The Sullivans are reminded, however, that if they do possess responsive documents, or it comes to light

8

that responsive documents were intentionally destroyed, the Court will impose sanctions. Nevertheless, the Court will not permit Plaintiffs to undertake a fishing expedition to investigate speculative spoliation.

The Court's April 6 order directed that if the Sullivans did not have documents responsive to these requests, they had to provide an explanation of the steps they took to locate responsive materials. The Sullivans have not sufficiently described their efforts. Therefore, the Sullivans must supplement their responses to Requests for Production of Documents to Mr. Sullivan Nos. 1, 3, 5-9, 11-17, 22, 23, and 26-28; and Requests for Production of Documents to Ms. Sullivan Nos. 7 and 8 to provide this information. The Sullivans must state where, when, and how they looked for this information.

Plaintiffs maintain that the Sullivans' responses to Plaintiffs' Third Set of Request for Production Nos. 29 through 40 are likewise deficient. (Filing No. 179-1.) Request Nos. 29-34 seek information related to 88 Med. Request Nos. 35 through 40 seek information similar to that requested for 88 Med, but for an entity called CDSK. CDSK owns and established 88 Med, and also has an ownership interest in GS Labs, Inc., an entity affiliated with Mr. Sullivan. Plaintiffs believe Mr. Sullivan may have had conversations with CDSK before 88 Med was formed which are relevant to the claims in this case. As explained earlier, the Court finds discovery pertaining to 88 Med may be relevant to a certain degree. The same is true for CDSK given its relationship with 88 Med. However, the scope of the requests is not proportionate to the needs of the case. Plaintiffs may narrow the requests and then re-serve them. The parties must confer before this is done. If the Sullivans do not have the information requested, they must say so in response to the discovery requests. Additionally, if the Sullivans cannot locate responsive information, they shall state where, when, and how they looked for this information.

Plaintiffs and Mr. Molloy maintain that the Sullivans' responses to Plaintiffs' and Mr. Molloy's Fourth Set of Requests for Production Nos. 41, 42, 43, 46, and 47 are also deficient. (Filing No. 179-1.) Defendants argue these requests are overly broad, as they are not limited in time or scope, but generally refer to communications and documents. The Court agrees with Defendants that Request Nos. 41, 42, and 43 are overly broad. Request No. 41 seeks "all non-privileged documents and communications that relate in any way to the breach of contract claim." (Filing No. 179-1.) Request No. 42 seeks production of "all non-privileged documents and

9

communications that related in any way to the breach of covenant of good faith and fair dealings claim." (Filing No. 179-1.) Request No. 43 seeks production of "all documents and communications regarding the Consulting Agreement referenced in your counterclaim." (Filing No. 179-1.) These requests require specificity. Plaintiffs may narrow these requests and re-serve them after the parties confer about the requests.

The Court finds Request Nos. 46 and 47 seek relevant information and are sufficiently narrow in scope. Thus, Defendants will be ordered to respond to these requests.

### E. Attorneys' Fees

Plaintiffs seek an award of attorneys' fees and costs incurred in connection with this motion and Defendants' failure to respond to the discovery requests. Based on Defendants' *pro se* and unrepresented status throughout much of this litigation (including when most of the discovery requests were served), as well as the limitations on discovery as set out in this order, attorneys' fees and costs will not be awarded.

### 2. Defendants' Motion to Compel

Defendants seek an order requiring Plaintiffs, as well as Mr. Molloy, to fully, and without objection, respond to Defendants' discovery requests. These requests seek documents generally pertaining to Plaintiffs' (1) policies and procedures; (2) patient records; (3) financial information; (4) trademarks; (5) business operations; and (6) ESI searches. Defendants also request that Plaintiffs clarify their responses to certain discovery requests. Defendants further request that the Court order Plaintiffs to withdraw their objections to the issuance of a subpoena duces tecum on Blue Cross and Blue Shield ("BCBS"), and to respond to related discovery requests. In opposition, Plaintiffs maintain that the discovery requests are overly broad, seek irrelevant information, and are not proportionate to the needs of the case. Plaintiffs also claim the documents sought in some of the requests include confidential health information which cannot be disclosed.

The Court has reviewed each individual discovery request at issue and has considered the parties' arguments regarding each such request. Having done so, the Court concludes as set forth below.

10

### A. Subpoena to BCBS & Related Discovery Requests (Interrogatory No. 5; Request for Production Nos. 12, 13, 39, 40, 41, 42, 45, 46, 47, 48, 51, 52)

Defendants maintain they need this discovery to test Plaintiffs' allegations that Mr. Sullivan implemented improper billing and other policies and procedures, which resulted in LMMC having to repay certain amounts to BCBS. BCBS investigated LMMC's billing practices and procedures from 2016 to 2018. This investigation ultimately resulted in a Corrective Action Plan. Plaintiffs are seeking to recover amounts paid to BCBS.

Plaintiffs claim the requests are overly broad because the BCBS investigation was resolved in 2018. Plaintiffs complain that the requests extend beyond the timeframe relevant to this litigation and improperly extend to other health insurance companies. Defendants contend, however, that the scope of the requests is proper because evidence of subsequent investigations could shed light upon whether LMMC continued to engage in the wrongful billing practices allegedly implemented by Mr. Sullivan following Mr. Sullivan's departure. According to Defendants, this information is relevant to Mr. Sullivan's defenses, including LMMC's knowledge, approval, and direction of Mr. Sullivan's actions pertaining to billing policies and procedures.

The Court believes the information sought through these requests is relevant (including information about other investigations outside the 2016-2018 timeframe), but the scope of several of the requests is excessive. The Court notes that while Plaintiffs did provide responses to some of the Requests for Production, they unilaterally limited production to practices implemented by Mr. Sullivan. This is insufficient. The Court finds Plaintiffs must supplement their responses to Interrogatory No. 5 and Request Nos. 12, 39, 40, 42, 46, 47, 48, 52. Also, the subpoena to BCBS may issue. Plaintiffs do not need to supplement their responses to Request Nos. 13, 41, 45, and 51 as the information sought has already been produced or is overly broad and not proportionate to the needs of the case.

### B. Policies & Procedures (Interrogatory No. 11; Request for Production Nos. 37, 39)

Interrogatory No. 11 asks Plaintiffs to identify all harmful policies and procedures Plaintiffs claim Mr. Sullivan implemented, and then identify how each policy was harmful to Plaintiffs. ([Filing No. 185-2](Filing No. 185-2).) In response, Plaintiffs stated the guidelines and procedures Mr.

11

Sullivan developed. However, Plaintiffs did not explain how those guidelines and procedures were harmful, but instead pointed to the BCBS Corrective Action Plan. Plaintiffs must supplement its response to this Interrogatory to fully answer the question asked.

Request for Production No. 37 seeks all medical records "relating to any medical or healthcare services or treatment that any of the Plaintiffs . . . have ever provided to any patient that Plaintiffs claim was improperly billed or improperly charged" due to policies and procedures implemented by Mr. Sullivan. (Filing No. 185-3.) Defendants maintain they need this information so they can test Plaintiffs' allegations that patients were, in fact, improperly billed. However, this Request seeks highly confidential health information of individuals not involved in this suit. The Request is not proportionate to the needs of this case. In this suit, Plaintiffs seek to recover the amounts they paid to BCBS based on unlawful billing practices allegedly implemented by Mr. Sullivan. The parties are not here to litigate BCBS's conclusions regarding improper billing. Therefore, Plaintiffs will not be ordered to supplement its response to this Request.[5]

### C. Patient Records (Interrogatory No. 7; Request for Production Nos. 20, 37, 38)

Request No. 38 seeks all bills, invoices, medical expense summaries, medical bills, health insurance statements, health insurance summaries, statements of claim, and statements of account for any healthcare or medical services Plaintiffs provided to any patient that Plaintiffs claim was improperly billed or charged due to policies and procedures allegedly implemented by Mr. Sullivan. (Filing No. 185-3.) Like Request No. 37 (discussed above), this Request intrudes upon protected health information of individuals not involved in this suit.[6] Again, the question in this suit is whether Mr. Sullivan is responsible for the unlawful billing practices and procedures utilized by Plaintiffs which resulted in a repayment to BCBS. Importantly, BCBS's investigation and findings regarding improper billing practices were not patient specific. The Court will not require Plaintiffs to supplement their response to this Request.

---

[5] Request No. 39 was addressed earlier in this Order.

[6] Except as otherwise stated in this Order, documents containing protected health information of third parties do not need to be produced in response to any of the discovery requests at issue in this Order—regardless of whether supplementation of the response is required.

12

The Court further finds Request No. 20 is overly broad as it asks that Plaintiffs identify all customer/patients lists for any of its clinics, not just those allegedly unlawfully solicited. Thus, no response is necessary. Plaintiffs' response to Interrogatory No. 7 is sufficient.

### D. Financial Information (Interrogatory Nos. 6, 12, 13; Request for Production Nos. 8, 9, 21, 23, 24, 26, 27)

Defendants are entitled to financial information. The problem is the scope of the information requested. Request for Production Nos. 8, 9, 21, 23, 24, 26, 27 seek things such as accounting records, K 1 distribution schedules, documents regarding sales volumes, tax returns, and balance sheets. ([Filing No. 185-3](#).) The list goes on and on. These requests need to be limited to those documents relevant to damages. The Court will not re-write these Requests for Defendants. However, Defendants will be permitted to serve revised Requests seeking more targeted financial information, after conferring with Plaintiffs regarding the scope of these requests.

As to Interrogatory No. 6, the Court finds Plaintiffs' response is sufficient, as it indicates it will be updated as litigation progresses. Interrogatory Nos. 12 and 13 are overly broad and encompass irrelevant information. ([Filing No. 185-2](#).) Therefore, no further responses to these Interrogatories will be required.

### E. Trademarks (Interrogatory Nos. 8, 10; Request for Production Nos. 4(a), (b), (c), (d), 6, 10, 14, 18, 28, 33, 35)

The Complaint alleges that Defendants unlawfully used Plaintiffs' trademarks and trade names in advertising. Therefore, there is no doubt that information pertaining to trademarks is relevant. However, many of Defendants' discovery requests seeking trademark information are overly broad, unduly burdensome, and not proportionate to the needs of the case. ([Filing No. 185-2](#); [Filing No. 185-3](#).) Just for instance, Request for Production Nos. 4(a) and (b) are overly broad as they extend to any service mark, tradename, or trademark in any state—not just to the tradenames and trademarks at issue in this case. ([Filing No. 185-3](#).)

The Court finds Plaintiffs' responses to Interrogatory No. 10, Request Nos. 4(a), (b), (c), Request No. 14, Request No. 18, Request No. 33, and Request No. 35 do not require supplementation. ([Filing No. 185-2](#); [Filing No. 185-3](#).) Plaintiffs have indicated they will produce

non-privileged documents responsive to Request No. 6. Plaintiffs represent that documents responsive to Request 4(d) have been (or will be) produced.

Plaintiffs shall supplement their responses to Interrogatory No. 8 and Request No. 28. The wording of Request No. 10 is a bit confusing, but the Court interprets this Request as calling for production of printed promotional and marketing materials, such as advertisements, catalogs, and brochures, for clinics in Nebraska. ([Filing No. 185-3](#).) These materials should be produced.

### F. General Business Information (Interrogatory Nos. 3(b)-(d),(e); Request for Production Nos. 30, 31)

Generally speaking, these requests seek information and documents about LMMC's corporate structure, as well as its officers, owners, and members. ([Filing No. 185-2](#); [Filing No. 185-3](#).) Defendants assert they need this information so they can identify additional individuals within LMMC who may have knowledge of facts at issue, and how those individuals fit into the corporate structure. Defendants are entitled to this information, but the discovery requests, as currently worded, go far beyond that. The Court will permit Defendants to revise Interrogatory No. 3, after conferring with opposing counsel. However, it is unclear to the Court how the documents requested in Request for Production Nos. 30 and 31 are relevant and proportional to the needs of the case. Therefore, responses to these discovery requests will not be compelled.

### G. ESI Searches (Interrogatory No. 15; Request for Production Nos. 3, 5)

Interrogatory No. 15 seeks discovery about discovery—information about areas searched, search terms used, and how information was retrieved. ([Filing No. 185-2](#).) The parties can discuss ESI search protocols, but as stated above, the Court will not allow the parties to undertake a fishing expedition regarding spoliation. If Defendants believe certain types of materials were not produced, or wants to know if certain places were searched, Defendants can ask those questions. However, Plaintiffs do not need to provide a detailed explanation of the steps they took to respond to discovery.

Request Nos. 3 and 5 are overly broad as they encompass a wide variety of information that is irrelevant to the claims and defenses in this suit. ([Filing No. 185-3](#).) Defendants may revise and reserve these requests if they wish, following consultation with opposing counsel regarding the scope of the requests.

### H. Clarification of Discovery Responses (Interrogatory Nos. 4(b), 14, 17, 19, 21; Request for Production Nos. 16, 17, 19, 29, 49, 50)

Defendants claim Plaintiffs' responses to these discovery requests require clarification. Defendants complain that Plaintiffs did not unequivocally state, in certain instances, whether responsive documents exist or if documents have been produced. The Court agrees that Plaintiffs must clearly indicate whether responsive information has been provided, or not provided, whatever the case may be. Therefore, the parties shall confer so Plaintiffs' counsel can clarify any responses Defendants do not understand and supplement consistent with this Order.

Accordingly,

**IT IS ORDERED:**

1. Plaintiffs' Motion to Compel Discovery Responses ([Filing No. 177](#)) is granted, in part, as set out above. Defendants' Motion to Compel ([Filing No. 183](#)) is granted, in part, as set out above.

2. The parties shall serve their supplemental discovery responses by April 16, 2024. The parties shall confer regarding any revisions they want to make to their discovery requests by April 2, 2024, and revised discovery requests shall be served by April 16, 2024.

3. A Third Amended Final Progression Order will be entered by separate document.

Dated this 18th day of March, 2024.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge